## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FRANK MELVIN SHERMAN,

             Plaintiff,

   v.

ANTHONY CORCELLA; CARLA OCAMPO;
MAHBOOB ASHRAF, M.D.; KARA PHILLIPS;
DAWN LEE; JOHN DOE BALLARO;
MICHAEL MCDONALD; JANINE BRENNAN;
C/O JANE DOE SAGON; C/O JOHN DOE
GRIGGS; C/O JANE DOE DIAZ; and DONNA
L. ADAMS-CONAHAN;

             Defendants,

Civil Action No.
3:19-cv-1889 (CSH)

**JULY 16, 2020**

## INITIAL REVIEW ORDER

**Haight, Senior United States District Judge:**

## I.  INTRODUCTION

On November 27, 2019, *pro se* plaintiff Frank Melvin Sherman, an African American sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), filed a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against twelve DOC officials at Corrigan-Radgowski Correctional Center ("Corrigan"), where he was previously housed.[1]  These officials include Warden Anthony Corcella, Registered Nurse ("RN") Carla Ocampo, Dr. Mahboob Ashraf,

---

[1]  The Court takes judicial notice that Plaintiff exercised his right to trial by jury and was found guilty of the following charges: "one count of theft of a firearm in violation of C.G.S.[Conn. Gen. Stat.] § 53a–212, one count of Burglary in the 3rd degree in violation of C.G.S. § 53a–103, one count of Larceny in the 3rd degree in violation of C.G.S. § 53a–124, [and] one count of criminal Possession of a Firearm in violation of C.G.S. § 53a–217(a)(1) and Carrying a Pistol without a Permit in violation of C.G.S. § 29–35(a)." *Sherman v. Comm'r of Correction*, No. CV124004967, 2014 WL 4922279, at *1 (Conn. Super. Ct. Aug. 29, 2014). On January 17, 2008, he "was sentenced to a total effective sentence of twenty-two years to serve by the court (Prescott J.)." *Id*

Nurse Supervisor Kara Phillips, Advanced Practitioner Registered Nurse ("APRN") Dawn Lee, Lieutenant John Doe Ballaro, RN Michael McDonald, RN Janine Brennan,  RN Donna Adams-Conahan, and Corrections Officers Jane Doe Sagan, John Doe Griggs, and Jane Doe Diaz (collectively herein "Defendants").  Doc. 1, at 1-3.  Based upon Sherman's indigence, the Court granted his motion to proceed *in forma pauperis* with his action.  Doc 13.

Sherman contends that the Defendants violated his constitutional rights under the Eighth, First, and Fourteenth Amendments.  Specifically, he alleges Defendants failed to provide adequate medical treatment, permitted unsanitary conditions of confinement, and applied excessive force to him in violation of the Eighth Amendment prohibition against cruel and unusual punishment; retaliated against his use of free speech in violation of the First Amendment; and deprived him of his property in violation of the Due Process Clause of the Fourteenth Amendment.

Although Sherman has not specified in what capacity he sues Defendants, the Court construes his Complaint liberally to allege that he sues them in both their individual and official capacities in light of his request for damages as well as declaratory and injunctive relief.[2]  Doc. 1-1, ¶¶ 76-78.  Pursuant to 28 U.S.C. § 1915A, the Court herein performs its mandatory screening duty by reviewing Sherman's Complaint [Doc. 1] to determine which, if any, of his § 1983 claims may proceed.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity, officer, or employee  and dismiss any portion that "(1) is frivolous, malicious,

---

[2]  A plaintiff may only seek injunctive relief under § 1983 against a defendant sued in his official capacity.  *See Altayeb v. Chapdelaine*, No. 3:16-CV-00067 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016).

or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b)(1)-(2); *see also Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 2926294, at *3 (D. Conn. June 8, 2018).

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim." *Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)).  Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).  A complaint states a plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, the court is not bound to accept "conclusory allegations." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S at 557).

If a plaintiff is proceeding *pro se*, it is well-established that his complaint must be "reviewed with special solicitude, and [his claims] 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)). *See also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citation omitted).  Nevertheless, even when reviewing a *pro se* complaint, a court "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618

3

F.3d 162, 170 (2d Cir. 2010).  A *pro se* complaint that contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is not sufficient to state a viable claim.  *Id.* (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

### III.  FACTUAL ALLEGATIONS

Plaintiff's factual allegations set forth in his handwritten Complaint are difficult to discern. However, to the best of its ability, the Court recounts the following alleged facts.

### A.  Arthritis and Bone Degeneration

Sherman is a fifty-four-year-old male who suffers from chronic arthritis and "degenerated bone loss" in his spine, shoulders, and possibly other limbs.  Doc. 1, ¶¶ 2-3.  Sherman's arthritis and degenerated bone loss have left him partially paralyzed in his right shoulder.  *Id.* ¶ 9.  He has also lost full range of motion in his shoulders and endures constant, "extreme pain."  *Id.*

According to Plaintiff, APRN Lee, Nurse Supervisor Phillips, RN Ocampo, and Dr. Ashraf, who are all alleged members of Corrigan's medical staff, failed to treat Plaintiff for his arthritis, shoulder, and feet; and they provided him with "ineffective pain pills."  *Id.* ¶ 4.  Sherman sought treatment and relief for his conditions by requesting a "button down shirt, sneakers from an outside vendor, [a] permanent bottom bunk/bottom tier, [a] double mattress, and a change of [his] flat mattress," which was "ripped and flat."  *Id.*  ¶¶ 5-6.  Plaintiff alleges that he has complained repeatedly to Unit Manager Ballaro, APRN Lee, Nurse Supervisor Phillips, and Warden Corcella. *Id.* ¶ 6.  Medical staff have allegedly informed him that he should report his complaints to "custody," and custody staff have told him he must get  "a medical order."  *Id.* ¶ 7.  Plaintiff thus claims that the custody and medical staffs have been "pingponging" his requests for two years. *Id.*

On July 30, 2019, Sherman informed APRN Lee that by forcing him to put on his pullover

4

shirt six to eight times a day, he was being subjected to "cruel and unusual punishment." *Id.* ¶ 10.

He also told APRN Lee the following facts: Lieutenant Ballaro and other correction officers were

continually harassing him to wear his shirt over his arm when he obtained a sling; he has a

degenerated spine; sleeping on a flat mattress "locks his arms and bones in severe pain;" he has

"three screws and a wire" in his rebuilt right shoulder but he never received physical therapy; he

believes that "old scar tissue and tendinitis [are] causing him pain;" and Neurontin (Gabapentin)

does not work for his pain due to "inflamed tendons, joints, or arthritis." *Id.* ¶¶ 11-13. Lee "never

touched or examined [Plaintiff]" and allegedly responded that she "was not going up against custody

for him." *Id.* ¶ 13.

Thereafter, Lieutenant Ballaro stated to medical staff that there was "nothing wrong with

[Sherman's] shoulder," and APRN Lee and RN Ocampo took his sling away from him on August

3, 2019. *Id.* ¶ 17. After Sherman asked APRN Lee why they took away his sling, she responded that

she was "not going against custody for [him]." *Id.* ¶ 18. She also refused his requests for an M.R.I.,

an appointment with a bone specialist, a "no shirt pass," a double mattress, and a foot bucket to soak

his feet. *Id.* Lee told Sherman that "custody won't allow it." *Id.*

**B. Seizures**

Sherman alleges that in 2014, while he was housed at MacDougall-Walker Correctional

Institution ("MacDougall-Walker"), he stopped taking the medication Depakote for his seizures

because it was damaging his liver. *Id.* ¶ 14. Since that time, he has not been prescribed any seizure

medicine. *Id.* He has thus complained to medical staff about the discontinuation of his seizure

medicine and has requested medical staff to provide a prescription for seizure medicine. *Id.*

On or about July 15, 2019, Sherman was moved from the top tier to the bottom tier bunk after

several complaints he made to Lieutenant Ballaro.  *Id.* ¶ 15. On July 23, 2019, Sherman suffered a

seizure and fell, hitting the wall and the floor with his face, and was knocked unconscious.  *Id.*

Seven days later, on July 30, 2019, Plaintiff was sent to the hospital to receive a "scan of his

head and x-rays" for fractures. *Id.* ¶ 16.  The results were "good" except that Sherman complained

of seeing a white flashing light in his right eye and "felt unstable as if he [were] walking sideways."

*Id.*

## C.  Second Degree Burn on Right Foot

On Saturday, August 31, 2019, Sherman was making coffee when his "right arm gave out."

*Id.* ¶ 19.  He dropped the hot pot on his right foot, spilling scalding water and burning his foot.  *Id.*

Sherman was called to the medical unit for a blood pressure check, showed RN McDonald his right

foot, and requested pain medication for his burn.  *Id.* ¶ 19.  RN McDonald allegedly stated that the

foot was "all right" and provided him with Tylenol and Bacitracin.[3]  *Id.*

Sherman returned to his cell but could not sleep.  *Id.* ¶ 20.  At 4:30 a.m., he stopped

Lieutenant John Doe and showed him his foot.  *Id.*  After the Lieutenant called medical staff,

Sherman saw RN McDonald again, who said that medication would be provided and that he would

bring Sherman a wheelchair for showering and then wrap the burn on his foot.  *Id.*  However, as of

Monday, September 2, 2019, neither RN McDonald nor other medical staff provided Plaintiff with

medication, a wheelchair for the shower, or wrappings for his burn.  *Id.*  ¶¶ 21-22.

---

[3]  The Court takes judicial notice that Bacitracin is reputed to be a "medication [which] is used to prevent minor skin infections caused by small cuts, scrapes, or burns" and "belongs to a class of drugs known as antibiotics."  https://www.webmd.com/drugs/2/drug-14270/bacitracin-topical/details.

6

**D.   Fabricated or Falsified Medical Reports**

According to Sherman, defendants RN McDonald, APRN Lee, Nurse Supervisor Phillips, Dr. Ashraf, and RN Adams-Conahan issued fabricated or falsified medical reports dated October 4, and October 22, 2019, to cover up their deliberate indifference to his medical needs and misconduct. *Id*. ¶ 22; *see also* Doc. 1-1, ¶ 54.

**E.   Treatment for Foot Conditions**

Sherman alleges that he suffers from several conditions affecting his feet, including hammer toes, bunions, burns, and arthritis.  Doc. 1, ¶ 41.  In addition, his left foot is a half size larger than his right foot.  *Id.* ¶ 42.  Plaintiff further alleges that he cannot walk without shooting pain from his feet to his degenerated spine.[4] *Id.* ¶ 41.

Plaintiff has requested treatment for his feet from medical staff.  *Id.*  Specifically, he has requested a foot bucket to soak his feet and a sneaker pass or medical order to purchase shock absorbent sneakers ("with gel or springs") from an outside vendor.  *Id.*  These requests have been denied.  *Id.*  Consequently, Sherman has purchased all of the sneakers that he has been instructed to buy, and he has also tried foot cushions.  *Id.* ¶ 42.  However, none of these sneakers or foot cushions has alleviated his foot pain.  Also, Nurse Supervisor Phillips, APRN Lee, and Dr. Ashraf have never examined his feet or questioned the partial numbness, pain and stiffness he suffers every day due to untreated arthritis, degenerated spine, bone loss, and shoulder separation.[5] *Id.*

---

[4]  Plaintiff's Complaint is handwritten, and some of his allegations regarding his feet are illegible.  However, it generally appears that Sherman alleges he requires treatment for his feet that he has not received from medical staff.

[5]  Sherman's allegations are not fully legible but appear to state that Lieutenant John Doe Ballaro's "excessive force" caused his "shoulder separation."  Doc. 1, ¶ 42.

**F.   Retaliation by Correction Officer Diaz and Lieutenant John Doe Ballaro**

Sherman alleges that he was engaged in an "on-going battle" with medical staff who refused to treat his arthritis, which restricted his right shoulder and caused him severe pain when lifting his arms above his head.  Doc. 1, ¶¶ 23, 29.  For example, medical staff refused to issue Sherman a "no shirt pass;" and defendants APRN Lee, Dr. Ashraf, RN Phillips, and RN Ocampo refused to interfere with custody staff, who allegedly "harass[ed], complain[ed], and hound[ed]" Sherman to get a sling pass and shirt pass from medical staff.  *Id.* ¶ 23.  Sherman alleges he "wrote up several staff members for harassment and violations" of DOC Administrative Directive 2.17, policies and procedures delineating requirements for, and violations of, employee conduct.  *Id.* ¶ 24.

On Tuesday, September 3, 2019, Sherman observed Jane Doe Diaz making her tour upstairs and Lieutenant Ballaro making his rounds downstairs.[6]  *Id.* ¶ 25.  Sherman had previously written up Correction Officer Diaz for watching television while on duty.  *Id*. ¶ 26.

On that date, Sherman decided to take a "bird bath" by washing up in the sink because he had not showered since burning his foot on Saturday, August 31, 2019.  *Id.* ¶ 26.  He hung his "Daily Bathroom in Use" sign in respect for the female officer and due to the fact that upper tier inmates were able to view the interior of bottom tier cells.  *Id.*  Sherman then undressed fully and started to "wash up."  *Id.* ¶ 27.  Five minutes later, Correction Officer Jane Doe Diaz entered his cell, told him he should not cover the whole window, and took his sign.  *Id.* ¶ 27.  She then allegedly taunted Plaintiff by stating,  "Big dick, you should put it in your big mouth," and  slammed the door.  *Id.*  Sherman got dressed and pushed the alert button, but Correction Officer Diaz had turned it off.  *Id.*

---

[6]  It is not entirely clear whether Sherman is alleging a date of September 2 or 3, 2019. However, the Court construes this date as on or around September 3, 2019.  Doc. 1, ¶ 25.

¶ 28.  After Sherman started kicking the door, Diaz made a phone call.  *Id.*  Thereafter, Lieutenant Ballaro, the correction officer whom Plaintiff alleges previously harassed him about his arm and shirt, came into the block to talk with Diaz at the desk. *Id.* at Ex. D 21 [Doc. 1-7], at 2.

When Lieutenant Ballaro then approached Sherman's cell door, he "calmly told" Ballaro that he had just been taking "a bird bath in hope[s] of medical [staff] calling him" about his burned right foot.  Doc. 1,  ¶ 29. After Sherman showed his burned right foot, Lieutenant Ballaro said, "Cuff up. We'll talk about it when we get to seg."  *Id.*  Sherman refused to cooperate and was chemically sprayed twice.  *Id.*  Eventually, Sherman cuffed up with no resistance. *Id.*  He asked Ballaro and another correction  officer present to be careful with his shoulders, but Ballaro told the other officer that there was nothing wrong with Sherman's shoulders.  *Id.*  One correction officer then crushed Sherman's glasses in his hands. *Id.* ¶ 29.  Afterward, Ballaro and the other correction officer dragged Sherman by his arms to a "Behavioral Observation" cell in segregation on suicide watch status, while Sherman pled the whole time for the officers not to lift his arms high and not to place resistance holds on him.[7] *Id.* ¶¶ 29-30.

## G.    Behavioral Observation Cell

Also  on  September  3,  2019,  Sherman  alleges  that  he  was  arrested  and  charged  with possessing a weapon that was made from a toothbrush and found by Lieutenant Ballaro in Sherman's ripped mattress. *Id.* ¶ 31; Doc. 1-7, ¶ 6.  Sherman denied that the weapon was his and refused to give his fingerprints, so he was placed in a "Behavioral Observation" cell.  Doc. 1, ¶ 32.  He then "immediately went on a hunger strike" and defecated on himself.  *Id.* ¶¶ 32-33.   Sherman alleges

---

[7]    Sherman fails to indicate the name of the correction officer who assisted Ballaro in dragging him from his cell on September 3, 2019.  It may have been defendant Correction Officer John Doe Griggs or another correction officer who is not named as a defendant in this action.

he was given "nothing to clean up with," and was left to lie in his urine and feces. *Id.* ¶ 33. RN Adams-Conahan allegedly threw Band-Aids to Sherman for his burned foot but provided no further treatment.[8] *Id.* ¶ 34.  Ten days later, on September 13, 2019, Sherman fainted and was rushed to Backus Hospital with kidney failure and an infected right foot.[9]  *Id.* ¶ 35.

## H.  Destruction of Property

On April 9, 2019, Correction Officer Sagon allegedly made a false report that Sherman interfered with prison safety and security. *Id.* ¶ 36. She also  conducted a "shake down" of his cell. *Id.*  Because Sherman had defied Sagon's order to take down his photograph of the Dallas Cowboys football team, she allegedly tore up all of Sherman's  pictures of his dead mother, father, and sister on his wall.[10] *Id.* ¶ 37.

On April 17, 2019, Sherman discovered that Correction Officer Griggs had taken and/or destroyed all of his property, including $200 in food, more than $200 in cosmetics, his television, his paperwork, and all of his books. *Id.*  When Sherman asked Correction Officer Griggs why he had destroyed his property, Griggs allegedly answered, "It's because you disrespected Correction Officer Jane Doe Sagon, you bitch ass nigga!"  *Id.*  Correction Officer John Doe Boden and another John Doe Correction Officer looked like they were going "to jump him."  *Id.*  Sherman then asked for a

---

[8]  In his claim for relief, Sherman alleges that RN Adams-Conahan failed to provide him treatment for his burn while he was in the "Behavioral Observation" cell from September 3 to 9, 2019, and in the Restricted Housing Unit from September 9 to 13, 2019. Doc. 1-1, ¶ 56.

[9]  Sherman does not appear to allege an Eighth Amendment claim based on medical needs arising from his hunger strike or kidney failure.  To the extent that Sherman intended to assert such a claim, he may file an amended complaint.  Also, the writing at the top of page 12,  paragraph 35, of Plaintiff's Complaint is indecipherable.

[10]  Officer Sagon allegedly told Sherman that "[t]his is Patriots' country, meaning the New England Patriots." Doc. 1, ¶ 36.

cart to carry his legal work to his housing unit.  *Id.*  Correction Officer Griggs allegedly replied, "You like snitching on C/O [correction officers]" so "carry it" yourself.  *Id.* ¶ 38.

Later, in August 2019, Sherman saw Correction Officer Sagon in the H-Pod recreation yard. *Id.* ¶ 39.  He asked Sagon why she had destroyed his dead relatives' photographs; he also told Sagon he had no more photographs of these family members and was going to sue her.  *Id.*  She laughed and said, "I'll just have to give up all my savings to my mother." *Id.* ¶ 40.

**I.  Interference with Grievance Procedure**

Plaintiff alleges that RN Brennan would not process his medical grievances without an inmate request form CN9601. Doc. 1, ¶ 8.  Even when Sherman wrote requests on an inmate request form, the staff did not respond within 15 business days.  *Id.*  According to Plaintiff, RN Brennan has prevented and interfered with the grievance process, thereby "imped[ing] and frustrat[ing]" his efforts.  *Id.* ¶ 43.  Plaintiff alleges that her delay tactics have denied him access to the courts and prevented him from protecting his rights. *Id.*  ¶¶  47-48.

**IV.  DISCUSSION**

Construing his claims most liberally, Sherman attempts to allege Eighth Amendment violations based on deliberate indifference to his serious medical needs regarding his arthritis and bone degeneration, seizure condition, second degree burn on his right foot, and other conditions related to his feet.  He also alleges Eighth Amendment claims for unconstitutional conditions of confinement based on unsanitary cell conditions, use of "excessive force" against him, and falsification of medical records.  In addition, Sherman attempts to state a First Amendment claim for retaliatory acts and Fourteenth Amendment claims for destruction of his property and interference with his grievance procedure, resulting in denial of his access to the courts.

11

**A. Eighth Amendment Violations Based on Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Under this doctrine, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Id.* at 104 (citation and internal quotation marks omitted).

However, "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Id.* (citation and internal quotation marks omitted). "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998).

To meet the objective requirement, the plaintiff must establish that the alleged deprivation of adequate medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 279. Specifically, the plaintiff must show that the conditions to which he is subjected "pose an unreasonable risk of serious damage to his health" and that the deprivation of medical care is "sufficiently serious." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017); *Salahuddin*, 467 F.3d at 279; *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

Determining whether the particular deprivation is objectively serious "entails two inquiries." *Salahuddin*, 467 F.3d at 279. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Id.* In that regard, the prison official's duty is to provide "reasonable care" so that if he or she acts reasonably in response to an inmate-health risk, liability cannot be found. *Id.*

12

Second, "the objective test asks whether the inadequacy in medical care is sufficiently serious." *Id.* This inquiry requires the court to examine "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. *See also Ferguson v. Cai*, No.11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (collecting cases).  To determine whether a deprivation is sufficiently serious, "the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (citation and internal quotation marks omitted).

"The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280.  The plaintiff must show that the defendant acted with subjective recklessness – that is, the defendant knew of and disregarded "an excessive risk" to plaintiff's health or safety. *Darnell*, 849 F.3d at 32 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  To know of and disregard such an excessive risk, the defendant must be actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. *See also Salahuddin*, 467 F.3d at 281 (noting that the "charged official must be subjectively aware that his conduct creates [substantial] risk [of harm]").

Mere negligence on the part of a medical professional, even if it constitutes medical malpractice, cannot amount to a constitutional violation. *Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). *See also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim . . . requires proof of a mens rea greater than mere negligence"). Furthermore, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. *See also Hathaway v. Coughlin*, 37 F.3d 63, 70 (2d Cir. 1994) ("Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

### 1. Arthritis and Bone Degeneration

Sherman alleges that his arthritis and bone degeneration conditions are chronic and have existed since his arrival at Corrigan on October 31, 2017. Doc. 1, ¶¶ 2, 6. He asserts that failure to provide treatment for these conditions has resulted in partial paralysis to his right shoulder and caused him to be in constant, extreme pain, particularly during his daily activities of sleeping on a flat mattress and pulling a shirt over his head. *Id.* ¶¶ 2, 3, 9, 10, 11.

As to the objective prong, the Court finds that Sherman has sufficiently alleged a serious medical need based on the pain and discomfort he experiences in his every day activities resulting from his arthritis and bone degeneration conditions. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). However, the Second Circuit has set forth considerations that should guide the analysis. These considerations include (1) whether a reasonable doctor or patient would perceive the medical need in question as "important or worthy of comment or treatment," (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir.

2000).

In the case at bar, the Plaintiff's arthritis and bone degeneration conditions significantly impede his daily activities of dressing and sleeping and result in chronic, substantial pain. Accordingly, these conditions present a serious medical need for treatment.

### a. Claims against Dr. Ashraf and Warden Corcella

Sherman's allegations regarding Dr. Ashraf and Warden Corcella fail to establish their plausible personal involvement in the alleged Eighth Amendment violation. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

With respect to Dr. Ashraf, Sherman alleges that he refused to treat Plaintiff's serious arthritis, to prescribe effective pain pills, and to provide a shirt pass. Doc. 1, ¶¶ 4, 23, Doc. 1-1, ¶ 57. Plaintiff also alleges that Ashraf failed to inquire into essential facts necessary to make a professional judgment regarding his arthritis. Doc. 1-1, ¶ 58. However, these are "conclusory allegations or legal conclusions masquerading as factual conclusions," which cannot suffice to state a plausible claim. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and quotation marks omitted)). Plaintiff pleads no facts to support his allegations.

With respect to the subjective component of the Eighth Amendment analysis, Sherman has failed to provide facts to suggest that Ashraf was aware of Sherman's serious need for more effective pain medication, a shirt pass, or treatment for his arthritis and bone degeneration conditions. Plaintiff also fails to establish that Ashraf disregarded a substantial risk of serious harm to Sherman. *Salahuddin*, 467 F.3d at 281 ("The charged official must be subjectively aware that his conduct

creates [substantial] risk [of harm]") (citation omitted).    At present, Sherman's allegations are insufficient to state a plausible claim of an Eighth Amendment violation against defendant Ashraf.

As to Warden Corcella, with respect to Sherman's arthritis and bone degeneration, Sherman has alleged that he complained to Corcella about his need for medical treatment and various accommodations, such as a "double mattress and a change of flat mattress." Doc. 1, ¶¶ 5-6. However, Sherman provides no facts to support the allegations that he made such complaints to Corcella.   For example, he offers no specific dates, substance, or manner of communicating particular complaints.   He merely lists Corcella as one of numerous defendants to whom he made general complaints.

Under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.* at 873 (citation omitted). A plaintiff may thus demonstrate personal involvement of a supervisory official such as Corcella where "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring[.]" *Id.* (citation omitted).[11]

---

[11]  The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  However, without further Second

Moreover, a plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Here, Sherman has not alleged that Warden Corcella received specific complaints and then failed to act to remedy the problems addressed therein. Plaintiff has also alleged no policy or custom of unconstitutional practices or gross negligence in supervision.  Absent proof that an official was personally involved in an Eighth Amendment violation, he or she cannot be held liable under § 1983. *See, e.g., Coleman v. Ducate*, No. 3:13-CV-139 (RNC), 2013 WL 12218996, at *1 (D. Conn. Apr. 2, 2013). Plaintiff's allegations establish no factual link between Corcella and the alleged Eight Amendment deliberate indifference to his medical needs.  Accordingly, Sherman's Complaint fails to raise an inference that Warden Corcella violated Sherman's rights under the Eighth Amendment.

Pursuant to 28 U.S.C. § 1915A(b)(1), the claims against defendants Ashraf and Corcella will be dismissed because they are not plausible under *Iqbal*, 556 U.S. at 678.  These claims fail to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (citation and internal quotation marks omitted). However, dismissal will be without prejudice to Plaintiff repleading these claims if he is able to do so in sufficient detail in an amended complaint.

### b.  Claims against Lieutenant Ballaro, APRN Lee, and Nurse Supervisor Phillips

In general, Sherman alleges he requested treatment from prison officials for his arthritis and bone degeneration conditions, including access to a bottom bunk/bottom tier in his cell, a double mattress, the use of a sling, and a shirt pass so that he would not have to pull a shirt over his head.

Circuit guidance on this issue, the Court assumes for purposes of ruling on this motion that the categories outlined in *Colon*, 58 F.3d at 873, remain valid.

Doc. 1, ¶ 6.  With respect to defendants Lieutenant Ballaro, APRN Lee, and Nurse Supervisor Phillips, Plaintiff specifically alleges he made requests to them arising from his arthritis and bone degeneration and need for treatment. *Id.*  He also alleges that after he returned from the hospital after a seizure in July 2017 and experienced right shoulder pain, Lieutenant Ballaro wrongfully indicated to the medical unit that Sherman had nothing wrong with his shoulder. *Id.* ¶¶ 17-18, Doc. 1-5, at 62-63. Moreover, on August 3, 2019, APRN Lee (along with RN Ocampo) took away Plaintiff's sling. Doc. 1, ¶¶ 17-18.  Plaintiff also alleges that when he informed APRN Lee about his medical needs, she responded to his requests for treatment by saying that she would not "go[ ] up against custody for him." *Id.*  ¶ 18. Lee allegedly refused Plaintiff's requests for an M.R.I. or a bone specialist, stating "custody won't allow it!" *Id.* Construing these allegations most liberally in Plaintiff's favor for purposes of this initial review order, the Court concludes that they suggest defendants Lieutenant Ballaro and APRN Lee acted with conscious disregard to Plaintiff's pain and need for treatment relevant to his conditions of arthritis and bone degeneration.

As to Nurse Supervisor Phillips, Sherman alleges that she "had actual knowledge of Plaintiff's pain" and was aware of his need for medical treatment for his arthritis and bone degeneration through his medical requests and medical history. Doc. 1-1, ¶ 59.  Construed liberally, these allegations raise an inference that Nurse Supervisor Phillips was in a supervisory position, had personal notice of Plaintiff's need for treatment for arthritis and bone degeneration conditions, and showed "deliberate indifference" by failing to remedy them.  *See Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019) (holding that supervisory officials who "were aware of [the plaintiff prisoner's] grievances and failed to remedy the recurring wrong" may be held liable for § 1983 violation).  Accordingly, Sherman's Eighth Amendment claims based on deliberate indifference to his medical

needs for his conditions of arthritis and bone degeneration will proceed against Lieutenant Ballaro, APRN Lee, and Nurse Supervisor Phillips.

### c.   *Claims against RN Ocampo*

Sherman alleges that RN Ocampo (along with APRN Lee) took away his sling for his right shoulder on August 3, 2019.  Doc. 1, ¶ 17.  However, he has not alleged any facts to suggest that she was aware that removing the sling would pose a substantial risk of harm to Sherman.  *See Salahuddin*, 467 F.3d at 281 ("The charged official must be subjectively aware that his conduct creates [substantial] risk [of harm].").  Absent such factual allegations, Plaintiff cannot make out the subjective component necessary to state a plausible claim that RN Ocampo acted with deliberate indifference in violation of the Eighth Amendment.  Therefore, this claim against RN Ocampo must be dismissed because, as pled,  it "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1).  However, the dismissal will be without prejudice to Plaintiff repleading the claim in an amended complaint if he possesses sufficient facts to do so.

### 2.   Seizures

In his Complaint, Sherman alleges that he has not received the seizure medication he requires, and that he has experienced a seizure as recently as July 23, 2019.  Doc. 1,  ¶ 15. Sherman's allegations satisfy the objective prong of his Eighth Amendment claim because seizures are considered to present a serious medical need. *Walker v. Wright*, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *7 (D. Conn. May 15, 2018).  *See also, e.g.,  Harrington v. Vadlamudi*, No. 9:13-CV-0795(BKS/DJS), 2016 WL 4570441, at *7 (N.D.N.Y. Aug. 9, 2016) ("A seizure condition is a serious medical condition and a failure to respond to an inmate's complaints regarding the possible onset of a seizure may constitute a sufficiently serious deprivation of medical care.").

19

However, as to the subjective prong, Sherman has alleged no facts to show that any of the named defendants possessed the requisite personal involvement or knowledge about his need for seizure medication. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). With respect to Dr. Ashraf, Plaintiff alleges that the doctor was deliberately indifferent by failing to prescribe seizure medication for Plaintiff prior to his July 23, 2019 seizure. Doc. 1-1, ¶ 57. Plaintiff also alleges that Dr. Ashraf and APRN Lee failed to inquire into the essential facts necessary to make judgments about his medical needs, including seizures. *Id.* ¶ 58. However, these allegations are conclusory because they are devoid of any underlying facts to demonstrate that Ashraf and/or Lee acted with conscious disregard to Sherman's need for an appropriate seizure medication prior to his July 2019 seizure.

In fact, Plaintiff fails to allege any particular interactions that he may have had with any named defendant about his need for seizure medication, or how, if at all, any such defendant was aware that Sherman should be prescribed a seizure medication after the Depakote was discontinued in 2014 by a doctor at MacDougall-Walker due to concerns about liver damage. Doc. 1, ¶ 14. Therefore, Plaintiff's Eighth Amendment claim for failure to provide adequate medication or treatment for seizures will be dismissed for failure to state a plausible claim, 28 U.S.C. § 1915A(b)(1). This dismissal will be without prejudice to Plaintiff repleading his claim to allege personal involvement by any named defendant in the alleged deprivation.

**3.  Second Degree Burn on Right Foot**

Sherman alleges that RN McDonald acted with deliberate indifference to his medical needs for the burn on his right foot when he failed to provide Sherman with a shower and treatment for the burn for an alleged three days prior to Sherman's placement in the "Behavioral Observation" cell.

Doc. 1, ¶¶ 20-21.  Plaintiff describes his burn as a "second degree" burn; and unless such a burn is "so debilitating that the failure to treat [it] subjected him to a significant risk of harm," it may not suffice for purposes of the Eighth Amendment objective element.  *Calhoun v. New York City Dep't of Corr.*, No. 10cv182 (LAK/HBP), 2014 WL 144659, at *10 (S.D.N.Y. Jan. 14, 2014). *See also Cole v. Fischer*, No. 08 CV 512, 2009 WL 3734343 at *4 (W.D.N.Y. Nov.4, 2009) (finding that resulting back pain from second decree burns did not constitute a sufficiently serious injury), *aff'd*, 416 F. App'x 111 (2d Cir. 2011); *Pressley v. Green*, 02 Civ. 5261(NRB), 2004 WL 2978279 at *4 (S.D.N.Y. Dec. 21, 2004) (granting summary judgment upon finding that plaintiff's second degree burns to the chest and associated blistering did not constitute a sufficiently serious injury).  *Cf. Walker v. Vargas*, 11 Civ. 9034(ER), 2013 WL 4792765 at *8 (S.D.N.Y. Aug. 26, 2013) (holding second degree burns to be "sufficiently serious to satisfy the objective prong of a cruel and unusual punishment analysis").

In any event, construing Plaintiff's allegations of a second degree burn as satisfying the objective prong (*i.e.*, constituting a burn of sufficient severity), the Court examines whether Plaintiff has asserted a delay or interruption in treatment for his burn.  When an inmate brings an Eighth Amendment deliberate indifference claim based on "a temporary delay or interruption" of treatment, the court's objective "serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).  The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the

prisoner to a significant risk of serious harm." *Id.*  Relevant to the subjective component of the Eighth Amendment analysis, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions.  *See also Salahuddin*, 467 F.3d at 280.

Construing the instant allegations most liberally, Sherman's allegations that RN McDonald promised to provide him with medication, a wheelchair for a shower, and wrappings for his burn suggests that Sherman had a serious need for medical treatment at that time.  Doc. 1, ¶ 20. Because Sherman alleges that RN McDonald failed to provide this promised treatment and Sherman was later found to have an infected right foot when he was brought to Backus Hospital, *id.* ¶ 35, Sherman has sufficiently established facts indicating RN McDonald acted with conscious disregard to his serious medical needs.  Plaintiff has stated a plausible Eighth Amendment claim against RN McDonald based on his need for medical treatment for the burn on his right foot.

In addition, Sherman asserts a claim of deliberate indifference against RN Adams-Conahan, who allegedly threw Band-Aids to him for the burn on his foot while he was housed in the "Behavioral Observation" cell. *Id.* ¶ 34.  Because his allegations indicate that the burn became infected by the time he was brought to Backus Hospital, *id.* ¶ 35, Sherman has sufficiently stated a plausible claim that he had a serious medical need with regard to his burn injury, and that RN Adams-Conahan consciously disregarded that  serious risk of harm while he was kept in the "Behavior Observation" cell.

Accordingly, Plaintiff's Eighth Amendment claims based on deliberate indifference to his need for burn injury treatment may proceed against RN McDonald and RN Adams-Conahan.

### 4.   Treatment for Conditions Concerning Sherman's Feet

In his Complaint, Sherman alleges that he made several unsuccessful medical requests for foot treatments, including a foot bucket and an order to permit him to obtain sneakers from outside vendors to address his foot conditions. Doc. 1, ¶ 41. He also alleges Nurse Supervisor Phillips, APRN Lee, and Dr. Ashraf have not examined his feet or questioned him about his partial numbness, pain or stiffness. *Id.* ¶¶ 41-42. Plaintiff claims that these defendants' failure to provide the requested treatment for the conditions affecting his feet constitutes deliberate indifference to a serious medical need. Doc. 1-1, ¶¶ 57-59.

Assuming *arguendo* that Sherman has established a serious medical need with respect to the condition of his feet, he has failed to allege personal involvement of any particular defendant in the asserted Eighth Amendment violation. Sherman's allegations include no underlying facts to demonstrate that any defendant was personally aware of his serious need for medical treatment and acted with conscious disregard of a substantial risk of harm to him. Because Plaintiff has failed to state a plausible claim, the Court will dismiss this Eighth Amendment claim regarding the condition of Plaintiff's feet under 28 U.S.C. § 1915A(b)(1). However, dismissal will be without prejudice to repleading if Plaintiff can set forth sufficient facts to make out this claim against any defendant.

### 5.   Falsification of Medical Records

Sherman asserts that RN McDonald, APRN Lee, Nurse Supervisor Phillips, Dr. Ashraf, and RN Adams-Conahan violated the Eighth Amendment by fabricating medical reports dated October 4 and 22, 2019, to cover up their "deliberate indifference" and misconduct. Doc. 1, ¶ 22. He has not, however, presented these reports or indicated the substance of their allegedly false contents.

District courts have generally declined to find that falsification of medical records alone gives

rise to an independent Eighth Amendment claim under Section 1983. "[I]t is far from settled that falsification of medical records alone violates the Eighth Amendment." *Porter v. Bunch*, No. 16-CV-5935 (KMK), 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019) (citing and quoting *Rose v. Garritt*, No. 16-CV-3624 (KMK), 2018 WL 443752, at *7, 13 (S.D.N.Y. Jan. 16, 2018) (collecting cases); *Bloomfield v. Wurzberger*, No. 9:08-CV-619 (GLS/RFT), 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009) ("The filing of a false entry in medical records, without more, does not constitute a constitutional violation.").

A plaintiff may, however, state an Eighth Amendment claim where the falsification occurred in connection with alleged deliberate indifference to that plaintiff's medical needs or where falsification indicates that a defendant acted with deliberate indifference to that plaintiff's medical needs. *See Ruggiero v. Canfield*, No. 14-CV-00307 (LF), 2017 WL 9485692, at *15 (W.D.N.Y. Mar. 23, 2017), *report and recommendation adopted*, No. 14-CV-307 (RJA), 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017) (noting that discrepancies in the medical record could be construed as attempts to minimize the serious nature of plaintiff's lump, leading to denial of bioposy referral); *White v. Clement*, 116 F. Supp. 3d 183, 188-89 (W.D.N.Y. 2015) (evidence that registered nurse failed to document properly plaintiff's symptoms, which indicated possible adverse reaction to prescription medication, and continued same prescription could constitute deliberate indifference to inmate's serious medical need).

Here, Sherman includes only conclusory allegations that defendants falsified his medical records to cover up their misconduct. He has not alleged any facts concerning what information defendants falsified in his medical records or whether the falsification resulted in, or indicated any, deliberate indifference to his medical needs. Under these circumstances, Sherman's claim of

medical record falsification may not proceed as an independent Eighth Amendment claim.[12]  The claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b)(1).  Plaintiff may replead the claim in an amended complaint if he is able to present the facts necessary to make out this claim.

## B.   Eighth Amendment Violations Based on Conditions of Confinement

Sherman's allegations may be construed to assert an Eighth Amendment claim based on his conditions of confinement, specifically unsanitary conditions while he was confined in the "Behavioral Observation" cell in September of 2019.  As in an Eighth Amendment claim based on deliberate indifference to medical needs, a claim that conditions of confinement constitute "cruel and unusual" punishment requires allegations establishing both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To prove the objective element, a plaintiff must demonstrate that the conditions of his confinement result in "unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir. 1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  With respect to the subjective element, a plaintiff must show that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  In cases involving prison conditions, the requisite state of mind is one of "deliberate indifference" to inmate health and safety.  *Id.* (quoting *Wilson*, 501 U.S. at 302-03).

Sherman alleges that while in the "Behavioral Observation" cell, he defecated on himself but was not provided with anything to clean himself or his cell and was left to lie in his own urine and

---

[12]   The Court notes that evidence of medical record falsification may serve as support for a plausible Eighth Amendment violation based on deliberate indifference to Sherman's medical needs.

feces.  Doc. 1, ¶ 33.  Sherman's allegations fail to establish the duration of these unsanitary conditions.  However, for purposes of this initial review, the Court construes the allegations most broadly to find that Sherman has established the objective element of an Eighth Amendment claim based on the unsanitary conditions of confinement.  *See Walker v. Schult*, 717 F.3d 119, 128-29 (2d Cir. 2013) (unsanitary cell conditions, including "urine and feces splattered on the floor and insufficient cleaning supplies" may constitute deprivations that violate the Eighth Amendment).

Nevertheless, Sherman has not satisfied the subjective prong of his claim because he fails to allege the personal involvement of any defendant in this constitutional violation.  *Wright*, 21 F.3d at 501.  To state such a claim, Plaintiff's allegations must establish that a specific defendant was aware he was living in a cell with unsanitary conditions but acted with deliberate indifference to the those conditions.  *See Farmer*, 511 U.S. at 834.  The Court will dismiss this Eighth Amendment claim for unsanitary conditions of confinement as not plausible under 28 U.S.C. § 1915A(b)(1).  However, dismissal will be without prejudice to repleading in an amended complaint.

## C.  Eighth Amendment Violation Based on Excessive Force

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  An inmate alleging "excessive force" in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "[C]ourts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*,  503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson,* 503 U.S. at 8 (citation omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9 (citation omitted). Moreover, "[t]his is true whether or not significant injury is evident" because "[o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)). Moreover, it is the force used, as opposed to the injury sustained, that "ultimately counts." *Id.* The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *Wilkins*, 559 U.S. at 37 ("The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances.).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (citation and internal quotations omitted).

27

### 1. Chemical Spraying

To the extent that Sherman alleges excessive force based on being sprayed with chemicals, this claim must fail. "Courts considering the use of chemical agents have held that deployment of a chemical agent is not an unacceptable means of controlling an unruly or disruptive inmate." *Carolina v. Pafumi*, No. 3:12-CV-163 (VLB), 2013 WL 1673108, at *2 (D. Conn. Apr. 17, 2013) (collecting cases). "When reviewing the use of a chemical agent against a recalcitrant inmate, the court can find a constitutional violation only where the use of the chemical agent is malicious and sadistic." *Id.* "That the use may have been objectively unreasonable is insufficient to establish an Eighth Amendment claim." *Id.* (citing *Howard v. Nunley*, No. CV–06–00191–NVW, 2010 WL 3785536, at *4 (E.D. Cal. Sept. 24, 2010), *aff'd*, 465 F. App'x 669 (9th Cir. 2012)); *see also Soto v. Dickie*, 744 F.2d 1260, 1270 (7th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to . . . subdue recalcitrant prisoners does not constitute cruel and inhuman punishment."). In general, correction staff's use of a chemical agent on a "recalcitrant inmate" to force compliance with direct orders is not deemed "malicious and sadistic," but rather a good faith effort to restore order. *Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014).

In the case at bar, Sherman admits that he refused Lieutenant Ballaro's direct order to "[c]uff up," and was then sprayed twice. Doc. 1, ¶ 29. Plaintiff then concedes that he "eventually cuffed up with no resistance." *Id.* Accordingly, Sherman has failed to state an Eighth Amendment "excessive force" claim with respect to chemical spray because his allegations establish that he was recalcitrant when sprayed, forcing his compliance with a direct order.

### 2.  Dragging Sherman by the Arms

Additionally, Sherman alleges that in September 2019, Lieutenant Ballaro and an unnamed correction officer (whom he refers to as Correction Officer John Doe) dragged him by his arms to the "Behavior Observation" cell in suicidal watch. Doc. 1, ¶¶ 29-30.  Plaintiff alleges that he was not resisting the officers, but rather pleading with them to be careful of his arthritic shoulders ("not to lift his arms high" or put "resistance holds on him").  *Id.* ¶ 30.  In light of Plaintiff's allegations that he was not resisting and that he made the officers aware of his shoulder problems, Sherman raises an inference of malicious and sadistic conduct, which is sufficient to state an "excessive force" claim.  *See, e.g., Reed v. Roberts*, No. 3:18-CV-00809 (JAM), 2018 WL 3733969, at *3 (D. Conn. Aug. 6, 2018) (allegations that officers purposefully hurt plaintiff by twisting and pulling his arms were sufficient to state a plausible Eighth Amendment claim of excessive force).  The Court will permit this claim of excessive force against Lieutenant Ballaro to proceed in the action.[13]

### D.  Retaliation in Violation of the First Amendment

With respect to violation of the First Amendment, Sherman alleges that Correction Officer Diaz and Lieutenant Ballaro took retaliatory action against him because he had complained about harassment and other misconduct by these officials in violation of Administrative Directive 2.17. Doc. 1, ¶ 24.  Plaintiff also alleges that Correction Officer Griggs, Correction Officer Sagon, and RN Brennan retaliated against him for filing complaints regarding correction officer misconduct in violation of the same directive.  Doc. 1-1, ¶ 67.

When prison officials take adverse action against an inmate, motivated by the inmate's

---

[13]  The Court permits this claim to proceed only against Lieutenant Ballaro because Sherman has not named another Correction Officer John Doe in the caption of the Complaint or in the list of parties, and this allegation does not appear to involve Correction Officer Griggs.

29

exercise of a protected constitutional right, a § 1983 retaliation claim may be sustained. *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation and internal quotation marks omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See, e.g., Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (citations and internal quotation marks omitted); *Booth v. Comm'r of Corr.*, No. 19-CV-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity.") (citation omitted). Although, not all oral speech by an inmate constitutes protected activity, some courts within the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim. *See McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

However, "an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."

30

*Pilgrim v. Luther*, 571 F.3d 201, 205 (2d Cir. 2009) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)).  Thus, district courts have concluded that First Amendment protection does not encompass an inmate's strident challenge to authority, *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016), expressions of disrespect or insolence toward correction officers, *Young v. Ice*, No. 14-CV-1475, 2015 WL 471675, at *3 (N.D. Ohio Feb. 4, 2015), or confrontations or discussion of issues with staff, particularly when ordered not to do so, *Martin v. Hurley*, No. 14-CV-66, 2014 WL 7157336, at *2 (E.D. Mo. Dec. 15, 2014) (collecting cases).

The second requirement, an adverse action, refers to "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citation and internal quotation marks omitted). Moreover, causation, the third prong of such an action, requires allegations that are "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id.* at 354.  The inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).  "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Because First Amendment retaliation claims are easily fabricated, courts consider such claims

with skepticism and require that they "be supported by specific and detailed factual allegations." *Dolan*, 794 F.3d at 295.  Conclusory allegations of retaliatory conduct will not suffice. *Id.*

### 1. Claims against Correction Officers Sagon and Griggs and RN Brennan

As an initial matter, if Sherman filed complaints with the prison about corrections officers' misconduct, those reports may constitute protected speech.  However, Sherman's allegations that Correction Officer Sagon, Correction Officer Griggs, and RN Brennan retaliated against him based on such complaints are conclusory and insufficient to establish a plausible claim of retaliation. *See Dolan,* 794 F.3d at 295.  Plaintiff's allegations include no information about when he filed complaints against correction officers, fail to suggest that any of these defendants knew about these complaints, and raise no inference that any particular defendant was motivated to take retaliatory action against him.  Although he alleges he complained about Correction Officer Diaz and Lieutenant Ballaro, Sherman fails to suggest he complained about defendants Sagon, Griggs, or Brennan.  Absent allegations to provide specific factual support for alleged retaliation, the claims of retaliation against Correction Officer Sagon, Correction Officer Griggs, and RN Brennan will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### 2. Claims against Correction Officer Diaz

Sherman alleges that Correction Officer Diaz retaliated against him because he complained about her watching television while on duty.  Doc. 1, ¶ 26.  In paragraphs 27 and 28 of his Complaint, Sherman alleges that Officer Diaz retaliated against him when she admonished him about covering his cell window, turned off his alert button, and made a phone call (after he started kicking his cell door) that resulted in Lieutenant Ballaro taking him to a "Behavioral Observation" cell. *Id.* ¶¶ 27-28; Ex. D 21 (Doc. 1-7, at 2).  In his claim for relief, Plaintiff also asserts that Diaz took

retaliatory action against him by filing a false disciplinary report on September 3, 2019, which resulted in his placement in segregation.  Doc. 1-1, ¶ 72.

For purposes of an intial review of the Complaint, the Court finds that Sherman may have plausibly engaged in protected speech by reporting Correction Officer Diaz for watching television while on duty.  Relevant to the second requirement regarding adverse action, Diaz's false disciplinary report resulting in Plaintiff's segregation could have  deterred a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.

However, Sherman has failed to  establish the third requirement of causation – *i.e.*, that his complaint against Correction Officer Diaz played a substantial part in her alleged adverse action against him.  Plaintiff provides no information about when he reported Diaz for watching television on duty or whether she knew that he had complained about her. Although Diaz allegedly made an insulting comment to Sherman, Doc. 1, ¶ 27, there are no facts to suggest a causal connection between his protected speech and her alleged adverse actions in having him sent to "Behavioral Observation" and writing a disciplinary report against him.  Absent sufficient factual allegations, Sherman's retaliation claim against Diaz will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### 3.  Claim against Lieutenant Ballaro

With respect to retaliation by Lieutenant Ballaro, Plaintiff alleges that  on July 30, 2019, he told APRN Lee that Lieutenant Ballaro continually harassed him to wear his shirt over his arm, even after Plaintiff had obtained a sling. Doc. 1, ¶ 11.  Plaintiff also alleges that  approximately one month later, on September 3, 2019, Lieutenant Ballaro told Correction Officer John Doe that there was nothing wrong with Sherman's shoulder and then dragged Sherman by the arms to the "Behavior

Observation" cell. *Id.* ¶¶ 29-30. Reading the Complaint as a whole and construing the allegations most favorably to Sherman, the Court finds that Sherman has established that he engaged in protected activity when he reported Ballaro to Lee; Ballaro harbored some animus against him; and Ballaro took adverse action against him when he dragged Sherman by the arms to the "Behavioral Observation" cell. *Id.* ¶¶ 27, 29-30.

Furthermore, Sherman's allegations sufficiently raise an inference of causal connection between Sherman's complaints about Ballaro's harassment and Ballaro's adverse action in dragging Sherman due temporal proximity. In particular, the time elapsed between the two events, approximately one month, raises an inference of causation.[14] *See Cruz v. Hillman*, No. 01-CV-4169 (DAB), 2002 WL 31045864, at *6 (S.D.N.Y. May 16, 2002) (finding plaintiff's claim survived motion to dismiss based on allegation that adverse action followed closely after the protected speech); *Smith v. Miller*, No. 15-CV-9561 (NSR), 2017 WL 4838322, at *8 (S.D.N.Y. Oct. 23, 2017) (concluding that plaintiff established temporal proximity for purposes of causation where plaintiff's grievance and alleged false misbehavior report were separated by only one month). The Court will permit the retaliation claim to proceed against Lieutenant Ballaro.[15]

---

[14] Although temporal proximity is sufficient to state a plausible claim, further evidence of retaliatory animus is required to enable a prisoner to survive summary judgment and proceed to trial on a retaliation claim. *Washington v. Afify*, 681 F. App'x 42, 46 (2d Cir. 2017).

[15] At paragraph 71 of his claim for relief, Sherman appears to allege retaliation based on being taken to segregation by Lieutenant Ballaro on April 19, 2019, and being placed in the "Behavioral Observation" cell on suicide watch on April 20, 2019. Doc. 1-1, ¶ 71. However, because Sherman has not alleged sufficient factual allegations about the circumstances of these additional allegedly retaliatory acts, the Court will not construe these allegations as stating plausible retaliation claims.

**E.   Fourteenth Amendment Violation Due to Deprivation of Property**

Sherman alleges that Correction Officers Sagon and Griggs destroyed his personal property in violation of due process under the Fourteenth Amendment.   The Due Process Clause protects against the deprivation of a protected property interest. A prisoner can state a due process claim for loss or destruction of property, however, only if the state has not created adequate post-deprivation remedies. *See Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

The DOC and the State of Connecticut provide remedies for an inmate who complains of lost or destroyed property.  Specifically, the DOC has established an administrative remedy for lost or destroyed property.[16]  *See* DOC Administrative Directive 9.6(16)(B). Moreover, under Connecticut General Statutes § 4-141, *et seq.*, a prisoner may bring a claim against the Connecticut Claims Commission unless there is another administrative remedy for his claim.  *See* Conn. Gen. Stat. § 4-142 (a)-(b).  Thus, a prisoner must first utilize the DOC administrative remedy and then may proceed to the Connecticut State Claims Commission if his claim is denied.  *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (finding no due process violation for unauthorized destruction or damage of property because State of Connecticut provides inmates with adequate remedy for lost or destroyed property pursuant to Administrative Directive 9.6(16)(B) and Connecticut General Statutes § 4-142).[17] Because the DOC and State of Connecticut provide adequate post-deprivation

---

[16]  *See* https://portal.ct.gov/DOC/AD/AD-Chapter-9.

[17]  As stated in *Riddick*:

Connecticut provides inmates with a remedy for lost or destroyed property: a prisoner can file a claim with the Board, and, if it is denied, subsequently file a claim with the Office of the Connecticut Claims Commissioner ('Claims Commissioner'), which

remedies, Sherman's due process claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## F.  Violation of Grievance Procedures

Lastly, Sherman alleges that RN Brennan's interference with his participation in grievance procedure has denied him access to the courts and the ability to protect his rights.  The Constitution mandates that inmates be afforded access to the courts.[18] *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).  However, "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (citations, alterations, and internal quotation marks omitted).  "Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." *Schlosser v. Manuel*, No. 3:19-CV-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right;" "neither state policies nor state statutes . . . create federally protected due process entitlements to specific state-mandated procedures") (citation and internal quotation marks omitted)).

Sherman cannot state a claim for denial of access to the courts based on interference with the

---

may order relief or authorize suit.

731 F. App'x at 13 (citing Conn. Dep't Corr. Admin Directive 9.6(16)(B); Conn. Gen. Stat. § 4-142).

[18]  The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

prison's grievance procedure.  Even if prison officials were to "thwart [him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" he would simply be excused from exhausting the grievance procedure; because the administrative remedies would be considered unavailable, he could then proceed to federal court.  *See Ross v. Blake*, __U.S. __, 136 S. Ct. 1850, 1858-59 (2016) (explaining exception to exhaustion requirement when administrative remedies are unavailable).  Accordingly, Sherman's claim for denial of access to the courts will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

## G.  Official Capacity Claims

In his claim for relief, Sherman seeks damages, declaratory judgments, and injunctive relief. Doc. 1-1, ¶¶  76-78.  In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. 209 U.S. at 155–56.  *See also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) ("[S]overeign immunity d[oes] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them immunity from responsibility to the supreme authority of the United States.") (citation and internal quotation marks omitted);  *In re  Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("A plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for 'prospective injunctive relief' from violations of federal law.")  Thus, the Court must consider whether Sherman's requests for relief against the defendants in their official capacities are plausible and within this Court's jurisdiction.

### 1.   Damages Against Defendants in their Official Capacities

Any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  "That is so because a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents. . . ." *Id.* (citation and internal quotation marks omitted). Accordingly, to the extent that Sherman asserts claims for money damages against the defendants in their official capacities, the claims will be dismissed.

### 2.   Requests for Declaratory Judgments

In addition to seeking damages, Sherman requests declaratory judgments against each defendant for violation of his constitutional rights. Doc. 1-1, ¶ 76.  However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).  Because Sherman is seeking declaratory relief premised on the defendants' past conduct, Sherman's claims are barred by the Eleventh Amendment.  *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

### 3.   Requests for Injunctive Relief

In his claim for relief, Plaintiff seeks three injunctive orders.  Doc. 1-1, ¶ 77.  He requests orders: (1) to be transferred out of Corrigan and never to be transferred there again; (2) to be issued a button up shirt and a pass to permit him to order sneakers from an outside vendor; and (3) to require the DOC to provide him with medical care from an outside doctor for his arthritis, shoulders,

spine, feet, and hands, physical therapy, and effective pain medication.[19]  *Id.*

Sherman's first request for transfer out of Corrigan is moot because he has already been transferred to Garner Correctional Institution.[20]    Moreover, his requests to be transferred to MacDougall-Walker and for a permanent order preventing his placement at Corrigan are not plausible requests because the decision of where to house an inmate is expressly left to the DOC's discretion. *See* Conn. Gen. Stat. § 18–86 ("The commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution or facility. . . when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action").  Inmates have no right to be housed at a specific correctional facility.  *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (holding that inmates do not have a constitutional right to avoid transfer to a less agreeable prison, even where the transfer visited a "grievous loss" upon the inmate); *McKinnon v. Chapdelaine*, No. CV115035454S, 2013 WL 951324, at *1 (Conn. Super. Ct. Feb. 13, 2013) ("Our courts have clearly held that a prisoner has no liberty interest in his classification or assignment within the prison system because the commissioner of correction has discretion to classify or transfer prisoners held in his custody.").

The remaining requests against Corrigan officials are also implausible because Plaintiff has been transferred to Garner. "In this circuit, an inmate's transfer from a prison facility generally moots

---

[19]    Sherman has also attached a proposed order to show cause and temporary restraining order, which – consistent with his Complaint's claims for injunctive relief – seeks treatment for his right shoulder, including surgery and physical therapy; examination by a qualified orthopedic specialist; a prescription for pain relief; a transfer to MacDougall-Walker Correctional Institution; a sneaker pass to order from an outside vendor; and a shirt pass and/or an order providing that he does not have to wear a pullover shirt.  *See* Doc. 1-2.

[20]    *See* Notice of Change of Address filed on February 11, 2020, Doc. 14.

39

claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  "However, there is an exception to the mootness doctrine for challenged actions that are 'capable of repetition, yet evading review.'" *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (citation omitted). "This exception will be applied . . . if  '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id*. (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

In the case at bar, Plaintiff has alleged no facts to show that his request for injunctive relief falls within the exception noted above.  His claims have not expired; and he has alleged no facts to suggest that he is currently being subjected to the "deliberate indifference" to serious medical needs that he has specifically alleged against the Corrigan defendants. *See, e.g., Reese v. Lightner*, No. 3:18CV1922(KAD), 2020 WL 1043794, at *2 (D. Conn. Mar. 4, 2020) ("Typically, an inmate's claims for injunctive and declaratory relief against correctional staff regarding conditions of confinement at a particular facility become moot when the inmate is transferred to a different facility or released from custody because those forms of relief become unnecessary and can no longer be awarded.") (citation omitted). *See also Shariff v. Coombe*, 655 F. Supp. 2d 274, 295 (S.D.N.Y. 2009) ("[I]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (quoting *Prin*s v. Coughlin, 76 F.3d 504, 506 (2d Cir.1996)); *Lane v. Reid*, 559 F. Supp. 1047, 1050 (S.D.N.Y. 1983) ("There no longer exists an actual controversy between Lane and the Fishkill prison officials" so "Lane's request for injunctive relief against such officials is now moot.").

Moreover, as discussed above, Plaintiff's Eighth Amendment claims regarding deliberate

40

indifference to his medical needs for the condition of his feet and for treatment of his alleged seizures will be dismissed for failure to state a claim. "Preliminary injunctive relief is available only to redress injuries that are related to the conduct giving rise to the complaint." *Torres v. UConn Health*, No. 3:17-CV-00325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). To the extent that the motion is "unrelated to the underlying claims" (in this case relates to dismissed claims), "preliminary injunctive relief is not warranted." *Torres*, 2017 WL 3713521, at *2. The remaining claims for deliberate indifference to Plaintiff's medical needs for his conditions of arthritis and bone degeneration will proceed against three Corrigan officials (Lieutenant Ballaro, APRN Lee, and Nurse Supervisor Phillips) in their individual capacities for money damages. However, these three defendants have no ability to provide injunctive relief regarding future medical treatment at Garner. Under these circumstances, Plaintiff's claims for injunctive relief are moot and will be dismissed.

Nonetheless, "[i]f an inmate's injury or need for injunctive relief persists despite his or her transfer to a different facility, the transfer may not moot the request for relief arising out of conduct that occurred at the transferring facility." *Reese v. Lightner*, No. 3:18CV1922(KAD), 2020 WL 1043794, at *3 (D. Conn. Mar. 4, 2020) (citing *Perez v. Arnone*, 600 F. App'x. 20, 22 (2d Cir. 2015)). For example, the Second Circuit found that transfer did not moot injunctive relief where the Plaintiff "alleged that the problem [giving rise to the request for relief] . . . persisted at his new facility, and the DOC Commissioner, a named defendant, ha[d] the power to implement the requested relief." *Perez*, 600 F. App'x at 22–23.

In the case at bar, Plaintiff has presented no facts to show that his alleged need for injunctive relief regarding medical treatment for arthritis and bone degeneration persist at Garner. There is also

no named defendant, such as a DOC Commissioner, with authority to implement his request at Garner.  However, if Plaintiff possesses sufficient facts to demonstrate a continuing need for injunctive relief (*i.e.*, medical treatment regarding his conditions of arthritis and bone degeneration) at Garner, he may amend his Complaint to seek declaratory relief to "be provided by a physician, a physician assistant [or] a health services administrator," *Reese*, 2020 WL 1043794, at *3, in his or her official capacity, to afford that relief at Garner.

## V. CONCLUSION

For the foregoing reasons, the Court enters the following orders:

(1) The case will proceed on Plaintiff's claims for violation of his Eighth Amendment rights (a) against Lieutenant Ballaro, APRN Lee, and Nurse Supervisor Phillips in their individual capacities for deliberate indifference to Plaintiff's need for medical treatment and pain relief regarding his arthritis and bone degeneration; (b) against RN McDonald and RN Adams-Conahan in their individual capacities based on their alleged deliberate indifference to his need for medical treatment for a second degree burn on Plaintiff's right foot; and (c) against Lieutenant Ballaro in his individual capacity for his alleged use of excessive force in dragging Plaintiff by the arms to the "Behavior Observation" cell in suicidal watch in September 2019.  In addition, Plaintiff's First Amendment claim for retaliation will proceed against Lieutenant Ballaro in his individual capacity. As to each of the aforementioned claims, Plaintiff may only recover damages.

Additionally, with respect to Plaintiff's Eighth Amendment claims, those based on the following are DISMISSED against all Defendants:  failure to provide seizure medication; failure to provide treatment for conditions affecting Plaintiff's feet; falsification of medical records; unsanitary conditions of confinement; and "excessive force" by chemical spraying. Moreover, Plaintiff's Eighth

Amendment claims for deliberate indifference to his medical needs are DISMISSED against RN Ocampo, Dr. Ashraf, and Warden Corcella.

All official capacity claims against all Defendants are DISMISSED.

Plaintiff's claims of First Amendment retaliation against Correction Officer Sagon, Correction Officer Diaz, Correction Officer Griggs, and RN Brennan are DISMISSED. Plaintiff's claims for violation of his Fourteenth Amendment due process rights based on loss or destruction of property are DISMISSED. In addition, Sherman's claim for denial of access to the courts against RN Brennan is DISMISSED.

Sherman's requests for declaratory relief and injunctive relief against all Defendants are DISMISSED. In light of his transfer from Corrigan to Garner, his request for an injunctive order transferring him out of Corrigan is MOOT; and his request for an order preventing his retransfer to Corrigan is DISMISSED.[21]

Any request for damages against the Defendants in their official capacities is DISMISSED as barred by the Eleventh Amendment.

If Sherman believes he can allege facts to cure the deficiencies identified in this Order, he may file a motion to amend and attach an amended complaint within **thirty (30) days** from the date of this Order.

(2) The Clerk shall verify the current work addresses for the defendants remaining in the action: Nurse Supervisor Kara Phillips, Advanced Practitioner Registered Nurse Dawn Lee,

---

[21] To the extent that Plaintiff seeks injunctive relief for persisting deliberate indifference to his arthritis and bone degeneration at Garner, he may, if so advised and able, amend his Complaint to include such a claim against a physician, physician's assistant, or health services administrator, in his or her official capacity, who now has authority to provide such treatment at Garner.

Registered Nurse Michael McDonald, RN Donna Adams-Conahan, and Lieutenant John Doe Ballaro, who allegedly worked at Corrigan-Radgowski Correctional Center, with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and attachments to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th)** day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)  The Clerk shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(4)  Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the Defendants choose to file an answer, they must admit or deny the allegations and respond to the cognizable claims recited above.  The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5)  Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(6)  The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7)  All motions for summary judgment shall be filed within **seven months (210 days)** from

the date of this Order.

(8)  According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  He must give notice of a new address even if he is incarcerated.  Plaintiff should explicitly write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It will not be sufficient to include the new address on a letter without indicating that the address is new.  If Sherman has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify the Defendants or defense counsel of his new address.

(10)  Sherman shall utilize the Prisoner E-filing Program when filing documents with the Court.  He is advised that the program may be used only to file documents with the Court.  Local Court Rules provide that discovery requests are not filed with the Court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on Defendants' counsel by regular mail.

(11)  Finally, the Court will resolve Plaintiff's recently-filed "Motion for a Preliminary Injunction and Temporary Restraining Order" [Doc. 16] in a ruling filed contemporaneously with this "Initial Review Order."

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
  July 16, 2020

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge